## Gerety *versus* Philadelphia, Wilmington and Baltimore Railroad Co.

1. A traveller about crossing a railroad on an embankment twelve feet high, in an open country, where an approaching train could be seen for some hundred feet, walked his horses up the ascent at a distance of ninety feet from the road, without looking up or down the road; when near the track, the train being within a short distance, going at twenty-five miles an hour, he lashed his horses to cross the track; the wagon was struck by the engine and he killed: *Held*, that he was guilty of contributory negligence.

2. In a suit by his wife against the railroad company for causing his death, she was properly nonsuited, although there may have been negligence in the engineer.

February — 1876.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia:* Of January Term 1874, No. 360.

This was an action on the case, commenced November 28th 1871, by Marcella Gerety against The Philadelphia, Wilmington and Baltimore Railroad Company, for negligence by the servants of defendants in causing the death of her husband, Peter Gerety, by a locomotive engine of the defendants whilst he was crossing their track in his two-horse wagon; the disaster occurred November 6th 1871.

The case was tried April 21st 1873, before Briggs, J.

For plaintiff C. McGlennen testified, that he was working at Gibson's oil works, about 200 feet from the crossing of the railroad at Fifty-eighth street, Philadelphia, and about three miles from the depot at Broad and Prime streets; the crossing there is an ordinary dirt road; witness heard a noise on the railroad, looked up and saw the deceased go before the engine on the railroad; it threw him down on the right side; witness heard no whistle; had not seen him until he was struck by the engine; the engine gave two whistles after he was struck; there was no flagman at the crossing; the train was coming from Wilmington; the track crosses at grade; between the works and the track it is up hill, about half the distance, heavy grade.

On cross-examination, he said: "We hear all whistles at Fifty-eighth street; might whistle and I not hear it; you must get on

[Gerety *v.* Philadelphia, Wil. & Balt. Railroad Co.]

the track I think before you can see all the way down the track; the hill commences about one hundred feet from the railroad; the railroad is about twelve feet above the meadow; from the bottom of the hill could not see half a mile down the railroad; the character of the neighborhood is open country; there are no trees as you go up the hill; four passenger trains pass every day before noon; eight or nine freight trains; the trains do not generally whistle at Fifty-eighth street; whistle when they get by."

Edward Miller testified that " he heard the train coming when he was standing about a square from Fifty-eighth street; he heard no whistle until after the accident or about the accident, heard two whistles then; one horse was standing on the platform, the other was lying between the two tracks; it was up grade for about fifty feet; the road winds; the track is straight about a mile from Fifty-eighth street."

A number of witnesses who were in sight of the crossing at the time of the accident, testified that they heard no bell or whistle before it occurred.

Alexander Richardson, who was the engineer of the train, testified: * * * " Had Westinghouse brake; air brake; gives control of train from locomotive; seven passenger cars on train; the running rate at that time was twenty-five miles an hour; through express train from Chester; when we whistle past Fifty-eighth street, we whistle for Gray's Ferry; running on that train seven years; I can see the station at Fifty-eighth street crossing; three-quarters of a mile to a mile; coming to Philadelphia it is a straight line for a mile; I can see a point fifty feet to the right of the track at Fifty-eighth street, from four to five hundred yards below Fifty-eighth street. Hay lane is five hundred yards from Fifty-eighth street; a whistling post below Hay lane; I whistled below Hay lane, at the whistling post, a signal whistle for the crossing at Hay lane; * * * whistle can be heard sometimes better than others; I think it could be heard at Fifty-eighth street; I was on the right hand side of the locomotive; was looking out; tracks straight from the post to Fifty-eighth street; I saw deceased when he was on the rise of the hill, coming out of the oil works; I was about six or seven telegraph poles from the crossing when I first saw him, and was down on the grade, coming up; he was just about the foot of the rise; I had got to the oil works; his horses were walking up, and when he got short distance from the track, he struck the horses with the lines, and horses jumped forward to the track, and ran in right ahead of us; he was standing back of the seat; was an open lumber wagon; when I first saw him, he was about ninety feet from the track, at the foot of the rise; there was nothing between him and me, when I first saw him; when I first saw him horses were walking, until he slapped the lines; the train was a short distance from the crossing, about fifty to one

[Gerety *v.* Philadelphia, Wil. & Balt. Railroad Co.]

hundred feet, when he slapped the lines; I stopped the train as quick as I could; I whistled for brakes; * * * I was so excited, I whistled before I struck the horse; whistled as soon as I saw him coming on track; train stopped in about nine car lengths; car is about ninety feet long, I think; we stop with two cars beyond the Fifty-eighth street crossing; deceased was looking to the head of his horses when coming, when I first saw him—when I saw coming on the track; stopped as quick as I could; air brake took effect; he was at Fifty-eighth street; only whistling post for Fifty-eighth street is below Hay lane; I judge it is sufficient whistle for Fifty-eighth street; signal whistle is a long whistle; if it was half a mile from post to Fifty-eighth street, and train going thirty miles an hour, would be a half of minute in reaching Fifty-eighth street; had a full view of the deceased from seventh telegraph pole; nothing to prevent my seeing him, and he could see me; he could not help seeing me; I had not the slightest idea of his intention to drive across the track; when he slapped the lines, I tried to stop; there was nothing to prevent his stopping. * * * The air brake took effect that morning instantaneously; I was on that train some length of time afterwards; you might have a wet rail, and it would not hold the air brake; it was a dry, cold morning; had a dry rail; sometimes you can, and sometimes you cannot stop; when stopped at Fifty-eighth street, whole train had passed crossing; the hind car was two car lengths from the crossing when it stopped; * * * when I first saw deceased I did not whistle, and I did not sound the bell; the first whistle I gave was for brakes; when he dropped reins on back of horses, he was right near the track; might have been eight or ten yards from the track; he kept walking until he got eight or ten yards from the track, and then he slapped the lines; the whistle approaching a station is to let conductor know we have heard bell, and not a signal whistle for crossing. Plenty of time to stop between refinery and Fifty-eighth street; would stop, if I had supposed deceased meant to cross."

The plaintiff closed and the defendants moved for a nonsuit.

Judge Briggs said:—

"I think the defendants should have whistled or given notice of their approach, after the engineer saw the deceased; but I think there was contributory negligence, and I direct a nonsuit."

Judgment of nonsuit was accordingly entered and the court in banc refused to take it off.

This was assigned for error on the removal of the record to the Supreme Court by the plaintiff.

*D. W. Sellers,* for plaintiff in error.—It was the duty of the engineer to approach the crossing at a moderate speed and to give warning: Cleveland & Pitts. Railroad Company *v.* Rowan, 16 P. F. Smith 396. The principle as to contributory negligence is

[Gerety v. Philadelphia, Wil. & Balt. Railroad Co.]

whether the deceased used proper precautions: Pennsylvania Railroad Company v. Weber, 22 P. F. Smith 27. It might have been more dangerous to stop than to go on ; when deceased saw the train he might have been choosing between two perils, or the reins in his fright may have dropped from his hands ; all was for the jury : Pennsylvania Railroad Company v. Ogier, 11 Casey 72 ; Kay v. Pennsylvania Railroad Company, 15 P. F. Smith 269 ; Howard Express Company v. Wile, 14 Id. 201.

*T. Hart, Jr.,* and *J. E. Gowen,* for defendants in error.—An engineer is not necessarily negligent in omitting to whistle at a crossing in an open country where any one can see the ʻtrains : Wharton on Negligence, sect. 804, 386 ; Telfer v. Northern Railroad Company, 30 New Jersey 188. The defendant was bound to stop and look for the approaching train : Pennsylvania Railroad Company v. Beale, 23 P. F. Smith 504 ; Pennsylvania Railroad Company v. Ackerman, 24 Id. 265. The standard of this duty being fixed and the same under all circumstances is to be declared so by the court : West Chester Railroad Company v. McElwee, 17 P. F. Smith 311 ; North Pennsylvania Railroad Company v. Heileman, 13 Wright 60.

Judgment was entered in the Supreme Court, February 21st 1876,

PER CURIAM.—The evidence in this case discloses either gross carelessness or recklessness, in the approach of Peter Gerety to the railroad and his attempt to cross it in front of the coming train. He walked his horses slowly up the gentle assent to the railroad, looking at them and turning to look neither to the right nor left. The track lay here on an embankment of about twelve feet in height, and the train could have been seen approaching for many hundred feet. The engineer, called by the plaintiff, testifies he saw the man and wagon about ninety feet off, he was going up slowly, and standing up in his wagon behind the seat. He came within a few feet of the track, and then, the train being near at hand, lashed his horses with the reins to force them across the track. Wagon, horses and man were caught, the wagon smashed, a horse and the man killed. This was all done with a train in full sight and in broad daylight. Standing up in his wagon he could see all around, and he therefore did not look to see, or with the most culpable recklessness he rushed on to his end.

Admit the possibility of his not hearing the train, and when he found himself almost at the road he lashed his horses to cross quickly, yet it was a culpable act to attempt to cross almost in front of a train moving with such celerity, about twenty-five miles an hour. We are unable to see anything to excuse him, and therefore the court was justified in nonsuiting the plaintiff, for the contributory negligence of the deceased. Judgment affirmed.